UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CRIMINAL NO. 10-310(DRD) |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| OBED ACEVEDO RANERO, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**OPINION AND ORDER**

BACKGROUND

The defendant, OBED ACEVEDO RANERO, hereinafter referred to as "Acevedo," has requested the court to revisit the determination of the Magistrate Judge Bruce J. McGiverin, entered on October 21, 2010, ordering detention pending trial, (Docket No. 37). A de novo request by "Acevedo's" by counsel followed on December 6, 2010 (Docket 105). The Magistrate Judge originally determined that the defendant was accused by a Grand Jury of an offense for which the maximum prison term of ten years or more is prescribed under 21 U.S.C. 841, 846 and further a weapons charge was entered under 18 U.S.C. 924. The Magistrate Judge contended that the defendant had not rebutted the presumption of risk of appearance and danger to the safety of the community. Further, the Magistrate Judge found that defendant constituted a serious risk to the safety of another or the community.

The court is required to perform a de novo review of the contested Detention Order.

United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990).[1]

The court starts the required analysis with the indictment wherein co-defendant "Acevedo" and co-defendant José Fuentes Fuentes were charged in two drug counts involving more than five kilos of cocaine and one weapon charge of possessing a weapon in furtherance of a drug trafficking offense.

Defendant "Acevedo" is charged in Count Sixteen (16) together with co-defendant José Fuentes Fuentes with a conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine a Schedule II Controlled Substance in violation of 21 U.S.C. 846 and 841(a)(1) and 18 U.S.C. 2. [2] He is further charged at Count Seventeen with a substantive violation in aiding and abetting form with co-defendant José Fuentes Fuentes, of attempting to possess with intent to distribute five kilograms of a mixture or substance containing five (5) kilograms or more of cocaine in violation of 21 U.S.C. 846 and 841(a)(1) and (b)(1)(A)(ii)II and 18 U.S.C. §2. Each of these violations carry a sentence of ten or more years to life. Finally, at Count Nineteen he is charged with a weapon count in furtherance of a drug trafficking crime under Section 841(a)(1) and 846 of attempt to possess with intent to distribute five kilograms or more of a mixture containing a detectable amount of cocaine in violation of 18 U.S.C. 924( c). Defendant is further facing in consecutive fashion a fixed sentence of five (5) years. Both co-defendants are policeman serving in the Police Force of the Commonwealth of Puerto Rico.

---

[1] The court also notes the illustrated opinion of District Judge Keeton in United States v. Philiphs, 732 F. Supp. 255, 2548-259 (D. Mass 1990), requiring "the court to exercise independent consideration of all facts properly before it."

[2] The drug object of the conspiracy as well as the substantive count of attempt to possess cocaine, the drug was  sham cocaine.

THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. 3141 et seq. at § 3142(f)(1)(c) and (e), sets forth a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause established via an indictment that the person committed an offense for which the term of imprisonment of ten or more years is prescribed under the Controlled Substance Act, 21 U.S.C. 801. United Sates v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990).  In the instant case the presumption has been triggered because the quantities of drugs alleged in Counts Sixteen and Seventeen (five kilograms or more of cocaine) mandate a ten-year minimum to life sentence. 18 U.S.C.. 3142(f)(1)( C).   Further, defendant is charged with a weapon charge in furtherance of an attempt to possess cocaine transaction which mandates a consecutive fixed sentence of five years. The presumption, therefore, is clearly applicable to the instant case. Counsel for defendant, Michael Corona, accepted that the rebuttable presumption was activated.

The presumption has a "significant practical effect." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985).[3]  The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. The defendant, however, once the presumption is triggered, is required to carry the burden of production. United States v. Jessup, 757 F.2d 380-384.

The presumption created is that ". . . it shall be presumed that no condition or

---

[3] In United States v. O'Brien, 895 F.2d at 814, the court abrogated Jessup as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in United States v. Bayko, 774 F. 2d 516, 520 (1st Cir. 1985), "an independent review...tempered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in Jessup, 757 F. 2d at 387-388, United States v. Fortna, 769 F. 2d 243, 250 (5th Cir. 1985), United States v. Chimurenga, 760 F. 2d 400, 405 (2d. Cir. 1985), and United States v. Williams, 753 F. 2d 329, 333 (4th Cir. 1985). O'Brien, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of Jessup stated herein applicable for bail determinations at District Court level, 895 F. 2d at 815.

3

combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. 3142(e). The presumption created is therefore of "flight risk" and "danger" to the community. Jessup, 757 F.2d at 381.

Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. United States v. Jessup, 753 F.2d 383. The defendant is required to produce "some evidence" to the contrary. United States v. O'Brien, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Chief of the First Circuit, now Supreme Court Justice, Steven Bryer, at United States v. Jessup, 757 F.2d at 382-383. The "intermediate position" adopted in Jessup requires defendant to produce "conflicting evidence" as to "danger" and "flight"[4] and then the court "determine[s] on which side the evidence preponderates." United States v. Jessup, 757 F.2d at 383 citing Wright v. State Accident Insurance Fund, 289 Or. 323, 613 P.2d 755,759-60 (1985).

Trial District Judges were reminded in United States v. Jessup, 757 F.2d at 384, that Congress in establishing the presumption found that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." Senate Judiciary Report #225, 98th Congress 1984 p. 20, 1984 U.S. Code Cong. & Admin. News, p. 23, and further that "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." [Id].

The court in United States v. Jessup, Id., stated the following as to the method of

---

[4]   Jessup 757. F. 2d at 383 citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L. Rev. 527 (1978); Jessup (Id.) states that "the House of Judiciary adopted this sort of 'intermediate position'... ."

"rebutting the presumption": "In order to 'rebut' the presumption, the defendant must produce some evidence; the magistrate or judge should then still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight." Even after a defendant has produced evidence to rebut the presumption [as to both danger to the community and risk of flight],"the presumption does not disappear, but rather retains evidentiary weight - the amount depending on how closely defendants' case resembles the Congressional paradigm, <u>Jessup,</u> 757 F.2d at 387 - to be considered with other relevant factors." <u>United States v. Palmer-Contreras,</u> 835 F.2d 15, 17 (1st Cir. 1987).

Finally, in making its final determination after receiving the rebuttal pursuant to §3142 (g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. <u>United States v. Jessup, Id.</u>

At the de novo hearing held on January 13, 2011 (Docket 167), both parties proceeded via a proffer as is authorized under the case of   <u>United States v. Acevedo-Ramos</u>, 755 F.2d 203, 208 (1st Cir. 1985)(court authorizing proceedings in bail hearings via proffer citing, The House Judiciary Committee H.R. No. 907, 91st Congress 2nd Session 182, 184 (1979)).

As stated before, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on a narcotic related indictment (conspiring to possess with the intent to distribute in excess of five kilograms of cocaine and the substantive count of attempt to possess with intent to distribute at least five kilograms of cocaine in aiding and abetting form together with co-defendant José Fuentes Fuentes). The court must, therefore, analyze the statutory factors required under the law. The court proceeds in **seriatim** fashion to examine the statutory criteria at 18

5

U.S.C.3142(g)(1),(2),(3),(4).

1. The Nature and Circumstances of the Offense. Acevedo, then an active member of the Puerto Rican State Police force, is charged with a conspiracy and a substantive attempt to possess with intent to distribute in excess of five (5) kilos of cocaine. He is also charged with possession of a weapon in furtherance of a drug trafficking crime, the attempt to possess five kilos of cocaine. All three crimes are serious crimes as large quantities of drugs and the use of a weapon is considered under federal law a crime of violence. United States v. Cirilo Muñoz, 504 F. 3d 106, 110 (1st Cir. 2007). Hence, this first criteria standing alone seems to favor detention as two of the crimes activate the presumption of detention standing each alone and further the weapons charge brings in an additional element of potential violence. Although the court must examine all criteria and then decide on which side as to bail or detention the evidence preponderates. This criteria closely falls standing by itself on the side of detention.

2. The Weight of the Evidence. The evidence is strong. Defendant is observed in a video tape frisking two drug buyers. The first of the two buys four kilos of what defendant thinks is four kilos of cocaine. The defendant after frisking the buyer then verifies that the front door of the apartment is closed. The defendant carries the drugs into the living room where the kilos are counted by defendant himself. Defendant stands then two to three feet from the transaction and listens to the entire drug related conversation. The drug transaction lasts around six minutes.  After the first buyer exits, eleven minutes later the next buyer appears, he is frisked by co-defendant Acevedo, then again he verifies that the door is locked. Acevedo again brings in the drugs and counts what he believes is cocaine. Defendant again counts six bricks of cocaine in front of the buyer. The transaction again is short in time duration. The buyer leaves. The time between one seller leaving and one arriving is around eleven minutes.

Prior to the drug transaction, the United States produced a transcript of a telephone conference between the confidential source and co-defendant José Fuentes Fuentes.

6

Fuentes assures the confidential source that they are ready another man has confirmed to be present who will receive $2,000.00 and is armed.[5]

During the video tape José Fuentes Fuentes is seen armed and displays the weapon. Co-defendant was asked if he is armed by the undercover agent. Acevedo seems to move his head accepting in the video, and further he refers to a bulge protrusion under his shirt. Notwithstanding the undercover will testify that Acevedo was armed, as was asked to Fuentes in the telephone call prior to the transactions.

Defendant Acevedo alleges that he did not know about the illegal drug transactions. But the co-conspirator statement belies the allegation by Acevedo. Further, Acevedo could have extracted himself from the second transaction of six kilos and did not. He ultimately is seen accepting $1,000.00 as he rejected the other $1,000.00 offered to him.

The weight of the evidence is strong backed by video and audio tapes and a co-conspirator statement as to Acevedo being armed. Further, Fuentes was armed was as seen in the video. Hence the criteria of weight of the evidence also clearly falls on the side of detention although the court must examine all criteria.

3. The history and characteristics of the accused. Co-defendant is a life resident of Camuy. He lives with his mother and father. Has a passport but has only used it once to travel to Santo Domingo. He does not have a past criminal record. He has been employed first as a retail worker in a store, then as a cabinet wood worker earning federal minimum wage. (Pre-sentence Report.) He has been in the State Police force since 2007. He aided homeless children while participating in the Police Athletic League. Counsel alleges that even if Acevedo participated in the crime in June 18, 2009, eighteen months elapsed and he did not commit any further crimes.

---

[5] A co-conspirator statement made during the conspiracy and in furtherance thereof. United States v. Marcus Mitchell, 596 F.3d 18. The phone call also confirms that two armed policeman are involved.

7

The family offers their residence valued at $410,000.00 as a guarantee and the mother would act as third party custodian.

This characteristic favors bail, although there is one blemish, he committed the crime not having been in the State Police force barely two years after being employed. Further, co-defendant is currently unemployed in an island that is still affected by a global recession meaning that jobs are not easy to find.

4. The nature and gravity of the danger posed by the person's release. Drug trafficking standing by itself constitutes a "danger" to society, "it is clear that [harm] to society caused by narcotic trafficking is encompassed within Congress' definition of danger [to the community]." United States v. De León, 766 F.2d 77, 81 (2nd Cir. 1985). The problem is that the dangerousness is heightened by the defendant carrying a weapon in furtherance of a drug transaction (attempt to possess with intent to distribute ten kilos of sham cocaine.) Defendant in the court's opinion must rebut the presumption of dangerousness. The court is of the opinion in the instant case that flight risk is not present as pursuant to Congressional findings that fligh risk is high among drug offenders because of ties with drug offenders in foreign countries. There are no such ties as the instant transaction does not involve any ties with other foreign drug offenders.

The matter is close but ultimately the court is of the opinion that the defendant has failed to rebut the presumption of "dangerousness" and even if he did the four criteria analyzed warrant detention. The court explains.

ANALYSIS

In the instant case the court must determine, after examining all the criteria, on what side the evidence preponderates after examining the required criteria set forth under the

8

law, 18 U.S.C. 3142(g)(1)(2)(3)(4).  United States v. Jessup, 757 F.2d 383.  Detention is inevitably warranted. The court briefly explains. First, the court understands that the defendant fails to rebut the presumption. Pursuant to the method approved by the Court of Appeals in this circuit the defendant must produce "conflicting evidence" as to danger to the community. United States v. Jessup, 753 F. 2d 383. But it is not "any" evidence as the "bursting bubble" theory was rejected by then Circuit Judge Bryer in Jessup, Id.  The United States has a convincing argument as to the seriousness of the crime of drugs and as to the enhancement of weapons. Furthermore, two state policeman are integral part of the crime by using weapons. Second, the United States has shown to have as to as to the drugs a strong case  as the defendant Acevedo frisks the buyer, assures the door to the condominium is locked, brings himself the drugs to the table, and defendant Acevedo himself counts the bricks of what he thought was 4 kilos of cocaine. He performs the exact same procedure eleven minutes later shattering his theory that he did not know the transaction was a drug transaction as he could have extracted from the second drug transaction.

As to the weapon, co-defendant Fuentes Fuentes is shown armed in the video. Acevedo is asked if he is armed and accepts by head gesture. Further, he touches his shirt at wrists level where there is an obvious portrusion created by an object. Further, and most critical, the co-defendant Fuentes Fuentes was taped in a phone conference with the confidential source wherein the co-defendant states everything is ready as there is another person who is armed who will receive two thousand dollars. Defendant Acevedo later is provided $2,000.00 but accepts only $1,000.00.

The jury could very well examine the video tape closely as the court preliminarily determined observing the defendant accepting with his head that he is armed and showing underneath the shirt a large bulge. This evidence together with the co-conspiratorial statement of co-defendant Fuentes Fuentes as to the presence of another who will be armed could lead the jury to conclude that Acevedo was armed during the two cocaine deliveries made in approximately eleven minutes adding to 10 kilos of cocaine. Defendants Fuentes Fuentes and Acevedo are both from the same police precinct of Vega Alta, Puerto

9

Rico; the transaction took place barely a few miles away in a Dorado City apartment.

The defendant merely shows that he has a clean record with strong ties to the community and that he has ability to produce a property to guarantee bail. However, he does not at all attack the strong showing of the seriousness of the crime of a policeman involved in a drug transaction to provide protection with a weapon nor the strong evidence as to him committing the crime except for alleging that he did not know the transaction involved illegal drugs. But he could have extracted from the second drug delivery but did not. Further, the co-conspiratorial statement of Fuentes Fuentes accetps that there was another person involved who was to be armed. The production offered simply is too limited and weak to overcome the presumption of a serious crime performed by a young policeman who barely has two years in the force performing such a serious crime wherein the evidence is extremely strong.

Even if the defendant produced sufficient evidence to rebut the presumption, the court is of the opinion that the three of the elements, the nature of the crime, the strong case of the United States and the showing of dangerousness by his proclivity to use his assigned weapon to protect a serious drug crime constitutes danger to the community which overrides his production as to the defendants positive characteristics.[6]

 The court understands that the criteria of "danger to the community" has been satisfied by "clear and convincing evidence" as required under United States v. Salerno, 431 U.S. 739, 750 (1987).

The Detention Order of Hon. Magistrate Judge Bruce McGiverin, Docket No. 39, is, therefore,  **AFFIRMED. Co-defendant Obed Acevedo Ranero is to remain DETAINED.**

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, this 23rd  day of February 2011.


s/Daniel R. Domínguez
**DANIEL R.DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

[6]     Further, the court notes that between the time of the crime and his subsequent arrest, almost eighteen months, Acevedo failed to notify the crime to the authorities.

10